# TAB 7

1. *Seller:* **DUNCAN DUVALL**
   310 Highland Village Road, Highland Village, Texas 75077

2. *Buyer:* **DOUBLETREE PARTNERS, a Texas Limited Partnership**
   2300 Highland Village Rd., Suite 310
   Highland Village, Texas 75077

3. *Property:* The real property situated in DENTON County, Texas described as follows:

   Being a tract of land situated in the W.P. Pearce Survey, Abstract No. 1015 and the Francis Pearce Survey, Abstract 1016, Denton County, Texas, and being a part of a called 24.6 acre tract of land described by deed to Murray Duncan Duvall as recorded under County Clerk's File No. 95-R000856 of the Real Property Records of Denton County, Texas, and being the remainder of a called 29.192 acre tract of land described by Deed to Murray Duncan Duvall as recorded under County Clerk's File No. 95-R000854 of the Real Property Records of Denton County, Texas, and being more particularly described in **Exhibit A** attached hereto and incorporated herein for all intents and purposes, together with all rights, privileges and appurtenances pertaining thereto, including any right, title and interest of Seller in and to adjacent streets, alleys, or rights-of-way.

4. *Sales Price:*
   The sales price for the Property is **$3,450,000.00**, payable as set forth and according to the provisions in Addendum A, SELLER FINANCING, incorporated herein by reference and made a part of this Contract for all purposes.

   *Adjustment:* The Sales Price will NOT be adjusted up or down based upon the land area of the Property as determined by any survey.

   Seller agrees to sell and convey to Buyer, and Buyer agrees to buy from Seller the Property, for the Sales Price, on the terms and conditions set forth herein.

5. *Third-Party Financing:* NONE
   This Contract is not conditioned on the Buyer obtaining financing from a third-party lender.

6. *Nonrefundable Independent Contract Consideration / Escrow Agent:*
   *Contemporaneously with the execution of this Contract, Buyer hereby delivers to Seller a cashier's check payable to the order of Duncan Duvall in the amount of Fifty Thousand and No/100 Dollars ($50,000.00), which the parties bargained for and agreed to as consideration for Seller's execution and delivery of this Contract. This Independent Contract Consideration is in addition to and independent of any other consideration or payment provided in this Contract, is nonrefundable, and shall be retained by Seller notwithstanding any other*

DEPOSITION EXHIBIT 10
PENGAD 800-631-6989
DOUBLETREE Prdctn 01060
DBLTREE0001
APP 000081

*provision of this Contract; provided, however, that if, and only if, this Contract is closed on or before the Closing Date (hereinafter defined), then this Independent Contract Consideration shall be applied against the Sales Price.*

*No earnest money is required to be deposited by Buyer* with **LAND AMERICA TITLE (AMERICAN TITLE COMPANY - ATTN: Cathy McMullen)**, at 3360 Long Prairie Road, Suite 200, Flower Mound, Texas 75022 (the "Escrow Agent") at the time this Contract is delivered to the Escrow Agent.

7. *Title Notices:*
   Homeowner Association - The Property is NOT subject to mandatory membership in an owners' association and its assessments and requirements.

   **Notice Regarding Unimproved Property Located in a Certified Service Area**
   If the Property is unimproved and is located in a certified service area of a utility service, then Seller shall give to Buyer a written notice in compliance with Section 13.257 of the Texas Water Code, and Buyer agrees to acknowledge receipt of the notice in writing. The notice must set forth the correct name of the utility service provider authorized by law to provide water or sewer service to the Property, and must comply with all other applicable requirements of the Texas Water Code.

   **Special Assessment Districts** - If the Property is situated within a utility district or flood district subject to the provisions of Section 49.452 of the Texas Water Code, then Seller shall give Buyer as part of the title documents the required written notice and Buyer agrees to acknowledge receipt of the notice in writing. The notice must set forth the current tax rate, the current bonded indebtedness and the authorized indebtedness of the district, and must comply with all other applicable requirements of the Texas Water Code.

   **Notice Regarding Possible Annexation** - If the Property that is the subject of this Contract is located outside the limits of a municipality, the Property may now or later be included in the extraterritorial jurisdiction of the municipality and may now or later be annexed by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

   **Notice for Property Located in an Agricultural Development District** - If the Property is located in an agricultural development district, then in accordance with Section 60.063 of the Texas Agricultural Code: (1) Seller shall give to Buyer a written notice that the Property is located in such district; (2) Buyer agrees to acknowledge receipt of the notice in writing; and (3) at the Closing, a separate copy of the notice with the current information about the district will be executed

DOUBLETREE Prdctn
01061

DBLTREE0002

APP 000082

by Seller and Buyer and recorded in the deed records of the county in which the Property is located.

*Notice Regarding Possible Liability for Additional Taxes - If for the current ad valorem tax year, the taxable value of the land that is subject to this Contract is determined by a special appraisal method that allows for appraisal of the land at less than its market value, the person to whom the land is transferred may not be allowed to qualify the land for that special appraisal in a subsequent tax year and the land may be appraised at its full market value. In addition, the transfer of the land or a subsequent change in the use of the land may result in the imposition of an additional tax plus interest as a penalty for the transfer or the change in the use of the land. The taxable value of the land and the applicable method of appraisal for the current tax year is public information and may be obtained from the tax appraisal district established for the county in which the land is located.*

8. *Title Policy:*
Seller to furnish to Buyer, at Seller's expense, an Owner Policy of Title Insurance (the "Title Policy") issued by the underwriter for AMERICAN TITLE COMPANY ("Title Company") in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions as may be approved by Buyer: (1) restrictive covenants affecting the Property, (2) the standard printed exception for standby fees, taxes, and assessments, (3) utility easements affecting the Property, (4) reservations or exceptions otherwise permitted by this Contract or as may be approved by the Buyer in writing, (5) any matter which may be shown on a survey of the Property, and the standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements, (6) the standard printed exception as to marital rights, and (7) the standard printed exception as to waters, tidelands, beaches, streams, and related matters. Any modification of the survey deletion exception or any other standard title policy exception shall be at Buyer's expense.

TITLE COMMITMENT: Buyer, at no cost or expense to Seller, *has received* from the Title Company a Commitment for Title Insurance (the "Title Commitment") including legible copies of recorded documents evidencing title exceptions (the "Title Documents").

9. *Survey:*
Seller represents to Buyer that Seller does NOT have an existing on-the-ground survey of the Property. *Buyer, at Buyer's sole expense, has obtained a new current on-the-ground survey acceptable to Buyer* and the Title Company (the "Survey).

DOUBLETREE Prdctn
01062

DBLTREE0003

APP 000083

10. *Inspections; Acceptance of Property:*
    INSPECTIONS: Buyer hereby agrees that Seller has not made, and is not making, any representation, covenant, guaranty or warranty as to the condition of the Property, including improvements thereon, or to the environmental condition of the Property, and that *Buyer hereby waives all review periods and inspections including, but not limited to, an environmental assessment of the Property*, and that Buyer is relying on its own independent judgment and assessment of the Property.

    ACCEPTANCE OF PROPERTY: At Closing, Buyer agrees that it will accept the Property, including all buildings and improvements thereon on in its <u>AS IS, WHERE IS</u> condition, <u>WITH ALL FAULTS</u>, if any. Buyer understands and agrees that the following provision will be included in the Seller's warranty deed delivered to Buyer, to-wit:

    "Except as specifically stated herein or as expressly provided in the Commercial Earnest Money Contract *between Grantor and Grantee*, GRANTEE ACKNOWLEDGES AND AGREES THAT GRANTOR HAS NOT MADE, AND GRANTOR HEREBY SPECIFICALLY DISCLAIMS, ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, OR CONCERNING (a) THE NATURE AND CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, AND THE SUITABILITY THEREOF AND OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY ELECT TO CONDUCT THEREON; (b) THE EXISTENCE, NATURE AND EXTENT OF ANY RIGHT-OF-WAY, LEASE, RIGHT TO POSSESSION OR USE, LIEN, ENCUMBRANCE, LICENSE, RESERVATION, CONDITION OR OTHER MATTER AFFECTING TITLE TO THE PROPERTY, AND (c) THE COMPLIANCE OF THE PROPERTY OR ITS OPERATION WITH ANY LAWS, ORDINANCES OR REGULATIONS OF ANY GOVERNMENTAL OR OTHER BODY. GRANTEE ACKNOWLEDGES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, GRANTEE IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED BY GRANTOR. GRANTEE FURTHER ACKNOWLEDGES THAT ANY INFORMATION PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND GRANTOR, EXCEPT AS EXPRESSLY PROVIDED IN THE SAID CONTRACT OF SALE (a) HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND (b) MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION.
    THE CONVEYANCE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE BY GRANTOR TO GRANTEE, ON AN "AS IS, WHERE IS, AND WITH ALL FAULTS" BASIS. GRANTEE EXPRESSLY ACKNOWLEDGES THAT, EXCEPT AS OTHERWISE SPECIFIED HEREIN,

GRANTOR MAKES NO WARRANTY OR REPRESENTATION, ORAL OR WRITTEN, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT NOT LIMITED TO ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, TENANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE, WITH RESPECT TO THE PROPERTY.

WITHOUT LIMITING THE FOREGOING AND BY ACCEPTANCE OF THIS DEED, GRANTEE ACKNOWLEDGES THAT THE GRANTOR DOES NOT AND HAS NOT MADE ANY REPRESENTATION OR WARRANTY REGARDING THE PRESENCE OR ABSENCE OF ANY HAZARDOUS SUBSTANCE (AS HEREINAFTER DEFINED) ON, UNDER OR ABOUT THE PROPERTY OR THE COMPLIANCE OR NONCOMPLIANCE OF THE PROPERTY WITH THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT, THE SUPERFUND AMENDMENT AND REAUTHORIZATION ACT, THE RESOURCE CONSERVATION AND RECOVERY ACT, THE FEDERAL WATER POLLUTION CONTROL ACT, THE FEDERAL ENVIRONMENTAL PESTICIDES ACT, THE CLEAN WATER ACT, THE CLEAN AIR ACT, THE TEXAS NATURAL RESOURCES CODE, THE TEXAS WATER CODE, THE TEXAS SOLID WASTE DISPOSAL ACT, ANY SO CALLED FEDERAL, STATE OR LOCAL "SUPERFUND" OR "SUPERLIEN" STATUTE, OR ANY OTHER STATUTE, LAW, ORDINANCE, CODE, RULE, REGULATION, ORDER OR DECREE REGULATING RELATING TO OR IMPOSING LIABILITY (INCLUDING STRICT LIABILITY) OR STANDARDS OF CONDUCT CONCERNING ANY HAZARDOUS SUBSTANCES (collectively, the "Hazardous Substance Laws"). For purposes hereof, the term "Hazardous Substances" shall mean and include any substance, whether solid, liquid or gaseous (a) which is listed, defined or regulated as a hazardous substance, hazardous waste or solid waste, or otherwise classified as hazardous or toxic, in or pursuant to any Hazardous Substance Laws; (b) which is or contains asbestos, radon, any polychlorinated biphenyl, urea formaldehyde insulation, or explosive or radioactive material, (c) which is or contains petroleum, petroleum products, including any fractions or distillates thereof; or (d) which causes or poses a threat to cause a contamination or nuisance on the Property or on any adjacent property or a hazard to the environment or to the health or safety of persons on the Property. As used in this section, the word "on" when used with respect to the Property or adjacent property means "on, in, under, above or about."

This agreement, waiver and release of claims shall survive the closing of the Contract transaction and shall not be merged therein."

11. *Brokers:* None

12. *Closing and Possession:*
The closing of the sale shall be at the offices of the Escrow Agent on or before 3:00 **P.M., CST,** *April 7, 2006* (the "Closing Date"), and possession of the Property shall be delivered to Buyer at the closing and funding of the transaction subject to the express terms and conditions of the Seller's and Buyer's lease

DOUBLETREE Prdctn
01064

DBLTREE0005

APP 000085

agreement which have been negotiated along with this Contract, said lease agreement incorporated herein. Buyer and Seller, however, may agree to close the transaction sooner or later by mutual written agreement. In the event the Closing Date is not a day on which the Title Company is regularly open for business, then the Closing shall be held on the next ensuing day on which the Title Company is regularly open for business.

At the Closing, Seller shall deliver to Buyer a general warranty deed conveying good and indefeasible fee simple title to the Property free and clear of any and all liens, assessments, easements, security interests and other encumbrances except the Permitted Exceptions. The general warranty deed shall include the Acceptance of Property provision set forth in Section 10 of this Contract. Delivery of the Title Policy will be deemed to satisfy the obligation of Seller as to the sufficiency of title required under this Contract. However, delivery of the Title Policy will not release Seller from the warranties of title set forth in the warranty deed. At the Closing, Buyer shall deliver to Seller the cash portion of the Sales Price, with the *Independent Contract Consideration being applied thereto.* Both Seller and Buyer shall execute the lease agreement and such other documents as may be approved by the parties and reasonably required by the Title Company to consummate the transaction.

13. *Prorations:*
Current year (2005) ad valorem taxes and assessments against the Property shall be prorated as of the Closing Date. If the amount of taxes and assessments for the current year are not available on the Closing Date, proration shall be made on the basis of ad valorem taxes and assessments in the previous year and no further proration shall be required or made between the parties. If this sale or Buyer's use of the Property after Closing results in the assessment of additional taxes for periods prior to Closing, the additional taxes shall be the obligation of Buyer, which obligation shall survive the Closing.

14. *Sales Expenses:*
In addition to the expenses stipulated to be paid as set forth in other provisions of this Contract, the following expenses shall be paid at or prior to Closing:

(A) Seller shall pay for any releases of existing liens including recording fees, tax statements or certificates, preparation of the warranty deed, one-half of the escrow fee charged by the Title Company, Seller's attorney fees;

(B) Buyer shall pay for any origination or application fees and prepaid items required by a lender, expenses incident to obtaining a loan (i.e., preparation of any note, deed of trust and other loan documents, recording fees, tax service fees, copies of restrictions and easements, amortization schedule, premiums for mortgagee title policies and endorsements required by lender; credit reports, photos), any required reserve deposits for ad valorem taxes and special assessments, one-half of the escrow fee charged by the Title Company, and all

DOUBLETREE Prdctn
01065

DBLTREE0006

APP 000086

other normal and reasonable closing costs except those specifically set forth herein as an expense to Seller.

15. *Escrow:* THIS PROVISION IS INTENTIONALLY DELETED AS EARNEST MONEY IS NOT REQUIRED HEREUNDER

16. *Casualty Losses and Condemnation:*
DAMAGE OR DESTRUCTION: All risk of loss to the Property will remain upon Seller before the Closing. If, prior to Closing, the Property is damaged or destroyed by fire or other casualty where the cost of repair exceeds ten percent (10%) of the Sales Price, then Buyer may either terminate this Contract by delivering a written termination notice to Seller or elect to close. If, before the Closing, the Property is damaged by fire or other casualty to less than ten percent (10%) of the Sales Price, the parties shall proceed to Closing as provided in this Contract despite any damage or destruction and there will be no reduction in the Sales Price and the Seller shall do one of the following: (1) fully repair the damage before the Closing, at Seller's expense; (2) give credit to Buyer at the Closing for the entire cost of repairing the building(s) on the Property; or (3) assign to Buyer all of Seller's right and interest in any insurance proceeds resulting from the damage or destruction.

CONDEMNATION: If condemnation proceedings are commenced against any portion of the Property prior to Closing, then Seller shall immediately notify Buyer in writing of the condemnation proceedings, and Buyer may (1) terminate this Contract by written notice to Seller within five (5) days after Buyer is advised of the condemnation proceeding (and in any event before Closing), in which case the Earnest Money shall be refunded to Buyer and the parties shall have no further rights or obligations under this Contract; or (2) appear and defend in the condemnation proceeding, in which case any award in condemnation will, (a) if known as of Closing, belong to Seller and the Sales Price will be reduced by the same amount, or (b) if not known as of Closing, belong to Buyer and the Sales Price will not be reduced.

17. *Default:*
If Buyer fails to close this Contract for any reason except Seller's default or termination of this Contract pursuant to a right to terminate set forth in this Contract, Buyer will be in default and Seller may terminate this Contract by delivering a written and immediately thereby releasing *Seller* from this Contract *and any down-payment funds delivered by the Buyer and on deposit with the Title Company at the time of Seller's termination shall be immediately returned to Buyer.*

18. *Representations:*
Seller represents that as of the Closing Date there will be no liens, assessments, or other security interests against the Property that will not be satisfied out of the Sales Price.

DOUBLETREE Prdctn
01066

DBLTREE0007

APP 000087

19. *Notices:*
    All notices or demands between the parties shall be in writing and effective when either (1) hand delivered to the address of the party set forth on PAGE 1 of this Contract, along with a copy to the respective party's attorney, or (2) sent by facsimile transmission to the telephone numbers set forth below. Either party may change the address for notices by giving the other party five (5) days advance written notice of such change of address or facsimile telephone number.

    Buyer fax # 972-317-9455

    Buyer's attorney fax # 972-317-3744, Attn: Thomas D. Moore, Jr.
    Address:    Blume, Stoddard & Moore,
                2300 Highland Village Rd., Ste. 310, Flower Mound, TX 75077

    Seller fax # 972-318-0567 (c/o Paul Confer)

    Seller's attorney fax # 972-394-2888, Attn: Burt R. Solomons
    Address:    1209 Stillwater Trail, Carrollton, TX 75007

20. *Assignment Permitted:*
    *The Buyer may NOT assign this Contract without the prior written consent of Seller. Buyer may assign the lease agreement provided that the assignee assumes in writing all obligations and liabilities under the lease agreement, and the Seller is given not less than ten (10) business days written notice of the assignee's complete name, address and telephone number. Any security deposit will be made payable to the assignee which shall be liable therefor. This Contract provision shall be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, legal representatives and permitted assigns.*

21. *Agreement of the Parties:*
    **THIS CONTRACT CONTAINS THE ENTIRE AGREEMENT OF THE PARTIES AND CANNOT BE CHANGED EXCEPT BY THEIR WRITTEN AGREEMENT.** This agreement shall be binding on the parties, their heirs, executors, representatives, successors, and assigns. This Contract shall be construed under and in accordance with the laws of the State of Texas. The parties agree and consent that venue of any action brought under this Contract shall be in DENTON County, provided, however, that venue of such action is legally proper in DENTON County, Texas.

22. *Severability:*
    In case any one or more of the provisions contained in this Contract shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or uneforceability shall not affect any other provision hereof, and this Contract shall be construed as if such invalid, illegal, or uneforceable provision had never been contained herein.

DOUBLETREE Prdctn
01067

DBLTREE0008

APP 000088

23. *Terminology:*
The captions beside the section numbers of this Contract are for reference only and shall not modify or affect this Contract in any manner whatsoever. Wherever required by the context, any gender shall include the other gender, the singular shall include the plural, and the plural shall include the singular.

24. *Federal Tax Requirement:*
If Seller is a "foreign person" as defined by applicable federal law, then Buyer shall be entitled to withhold from the sales proceeds an amount sufficient to comply with applicable federal tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. IRS regulations require filing written reports if cash in excess of specified amounts is received in the transaction.

25. *Time is of the Essence:*
Time is of the essence in the performance of this Contract. Strict compliance with the times for performance stated in this Contract is required.

26. *Business Day:*
If any date of performance under this Contract falls on a Saturday, Sunday or Texas legal holiday, such date of performance will be deferred to the next day that is not a Saturday, Sunday or Texas legal holiday.

27. *Effective Date:*
*The undersigned Seller and Buyer have executed this Contract on the respective dates set forth below, but effective APRIL 1, 2006, which is to be the commencement date of the Promissory Note to be executed by Buyer and delivered to Seller at the Closing.*

---

28. *Additional Provisions (if any):*
(a) Buyer agrees to allow Seller remain in possession of the Property under a lease agreement through April 30, 2007 in order to complete various contractual obligations for the use of the facility and premises (see, <u>Exhibit "B"</u> - Lease Agreement)
(b) All mineral rights shall be reserved to Seller in order that Seller may donate such mineral rights to New Horizons Ranch for Children, a 501(c)(3) non-profit organization and obtain available IRS credit for such donation.
(c) As it is the intent of the Seller and Buyer not to publicize the sale and purchase of the Property, the parties agree that from the date hereof until this Contract either is lawfully terminated or closed, Seller shall direct any press inquiries to the Buyer for response. Upon the closing of the transaction, including the execution of the lease agreement, Seller shall direct any press inquiries regarding the transaction to the Buyer for response; provided, however, that Buyer may respond to and make statements in connection with the continued operation of Seller's business and use of the Property by Seller. In any event, Seller shall not be liable to Buyer for any statements made to the press in connection with Seller's business.

DOUBLETREE Prdctn
01068

DBLTREE0009

APP 000089

*Buyer:*   DOUBLETREE PARTNERS, L.P.,
a Texas Limited Partnership

By: VILLAGE HARD 8, LLC,
GENERAL PARTNER

By: _____
FRED O. PLACKE, III
Manager

Date Signed: APRIL 7, 2006

*Seller:*   _____
DUNCAN DUVALL

Date Signed: APRIL 7, 2006

---

**RECEIPT of Contract and Earnest Money**

Escrow Agent has received this Contract for the Title Company this the 7 day of APRIL, 2006.

LAND AMERICA - AMERICAN TITLE COMPANY

By: _____
Cathy McMullen
Sr. Vice President

DOUBLETREE Prdctn
01069

DBLTREE0010

APP 000090

## SELLER FINANCING

*Property Address:* 310 HIGHLAND VILLAGE ROAD, HIGHLAND VILLAGE, DENTON COUNTY

1. *Down Payment at Closing:*
   **FOUR HUNDRED THOUSAND AND NO/100 DOLLARS ($400,000.00).**
   *This amount includes the $50,000.00 nonrefundable Independent Contract Consideration paid to Seller.*

2. *Promissory Note:*
   At Closing, Buyer shall execute and deliver a two (2) year promissory note (the "Note") payable to the order of Seller in the amount of **$3,050,000.00**, bearing interest at the fixed rate of EIGHT PERCENT (8%) per annum, *said Note being made a part hereof and is approved hereby in substance and form by Buyer.*

3. *Security:*
   The Note will be secured by a Vendor's Lien, a Deed of Trust and other documents that Seller may reasonably require to secure the Note. The Deed of Trust securing the Note will include a provision that any default in the payment of property taxes will constitute a default under the Deed of Trust securing the Note. The Deed of Trust will contain provisions for acceleration of maturity in the event of default or, at the Seller's or other noteholder's option, in the event all or part of the Property is sold, transferred, or further encumbered without the prior written consent of the Seller or other noteholder. The Deed of Trust will include a provision for the payment of reasonable attorney's fees if the Note is placed in the hands of an attorney for collection.

*Buyer:*  DOUBLETREE PARTNERS, L.P.,
a Texas Limited Partnership

By: VILLAGE HARD 8, LLC
GENERAL PARTNER

By: _____
FRED O. PLACKE, III
Manager

Date Signed: APRIL 7, 2006

*Seller:* _____
DUNCAN DUVALL

Date Signed: APRIL 7, 2006

DOUBLETREE Prdctn
01070

DBLTREE0011

APP 000091