# United States District Court

## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

FIDELITY NATIONAL TITLE      §
INSURANCE COMPANY, successor by    §
merger to LAWYERS TITLE INSURANCE   §
CORPORATION                  §
                               §      Case No. 4:08-CV-00243
v.                              §      Judge Mazzant
                               §
DOUBLETREE PARTNERS, L.P.       §

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Doubletree Partners' First Motion for Partial Summary Judgment and Brief in Support (Dkt. #117), Lawyers Title Insurance Corporation's Motion for Summary Judgment on Contract Claims and Brief in Support (Dkt. #118), Lawyers Title Insurance Corporation's Motion for Summary Judgment on Extra-Contractual Claims and Brief in Support (Dkt. #119), Lawyers Title Insurance Corporation's Motion to Exclude Expert Testimony of Mark McPherson and Brief in Support (Dkt. #121), Lawyers Title Insurance Corporation's Motion to Exclude Expert Testimony of George "Mick" Ulakovic (Dkt. #122), Doubletree Partners' Second Motion for Partial Summary Judgment and Brief in Support (Dkt. #125), Lawyers Title Insurance Corporation's Motion to Exclude Expert Testimony of Peter J. Phalon (Dkt. #127), Lawyers Title Insurance Corporation's Objections to and Motion to Strike Defendant's Summary Judgment Evidence and Brief in Support (Dkt. #135), Lawyers Title Insurance Corporation's Second Objections to and Motion to Strike Defendant's Summary Judgment Evidence and Brief in Support (Dkt. #156), and Doubletree Partners' Motion to Strike and Brief in Support (Dkt. #157).

Having considered the relevant pleadings, the responses thereto, and the oral arguments in a hearing held before the undersigned on September 13 and 14, 2011 (Dkt. #164), the Court finds the following:

# BACKGROUND[1]

The background facts are generally uncontested by the parties. Doubletree Partners, L.P. ("Doubletree") is a limited partnership formed by Fred Placke ("Placke") for the purpose of purchasing and developing the property made the subject of this case (Dkt. #123, Tab 58 at 1056). The property at issue consists of approximately thirty-six (36) acres (the "Property") located in the City of Highland Village (the "City") (Dkt. #123, Tab 16 at 161). At the time of purchase, Doubletree intended to develop the Property into a luxury retirement community for seniors, consisting of approximately eighteen (18) multi-story buildings with multiple units (Dkt. #123, Tab 58 at 1061). The Property development would also entail various landscaping, building a community center, and other amenities (Dkt. #123, Tab 36 at 510).

On or about April 7, 2006, Doubletree closed on its purchase of the Property with the seller, Duncan Duvall ("Duvall"), for a purchase price of $3.45 million (Dkt. #123, Tab 15 at 149). In conjunction with the purchase of the Property, Doubletree and Duvall escrowed the sales contracts for the Property with Lawyers Title Insurance Corporation ("Lawyers Title"), acting through their agent American Title Company,[2] to close the transactions (Dkt. #123, Tab 7 at 90). Doubletree purchased a title insurance policy from Lawyers Title, and paid an additional premium of $2,540.70 to obtain added survey coverage (Dkt. #117-8 at 28).

The Property is encumbered by various easements and restrictions; however, only two

---

[1] The evidence referred to in this section is taken from the evidence submitted by the parties in support of the motions and their responses thereto. The evidence will be referred to by docket number, tab number, and page number, if appropriate, *e.g.*, "(Dkt. #___, Tab ___ at ____)."

[2] American Title Company is a title insurance agent who is authorized to solicit, issue, and countersign title insurance policies on Lawyers Title's behalf and in its name (Dkt. #123, Tab 57 at 1040). For the purposes of this Opinion, the Court will refer to actions taken by Lawyers Title, recognizing that some actions were taken by its agent American Title Company.

encumbrances are relevant to the issues before the Court. First, an easement granted in 1956 (the "Flowage Easement"), gives the United States of America the right to flood, overflow, and submerge areas of the Property that lie below 537 feet in elevation. (Dkt. #117-7, Exhibit 8 at 20; Dkt. #123, Tab 3). The Flowage Easement prohibits construction of both structures intended for human habitation located below the 537-foot elevation, and any other structures below the 537-foot elevation, without written consent. *Id*. There are approximately nine (9) acres of the southern portion of the Property affected by the Flowage Easement (Dkt. #117-8, Exhibit 122 at 52; Dkt. #123, Tab 2).

Second, portions of the Property are also within the 100-year flood plain (the "Flood Plain"), as identified on various flood insurance rate maps and maps created by the City of Highland Village (Dkt. #123, Tab 4; Dkt. #123, Tab 5 at 34). Development of portions of the Property within the Flood Plain, which is described as land below an elevation of 537 feet, is prohibited by the City of Highland Village without a building permit (Dkt. #123, Tab 59 at 1135-1136). The City requires an applicant to submit a development plan, which is then sent to the Federal Emergency Management Agency ("FEMA") for approval. *Id*. The development plan must be approved by FEMA prior to obtaining City approval for a building permit. *Id*. Land within the Flood Plain can be developed by using fill dirt to raise the elevation above 537 feet of elevation; however, an offsetting amount of land volume, or valley storage, must be set aside to replace the land volume removed from the Flood Plain (Dkt. #123, Tab 59 at 1137-1139; Dkt. #157-7 at 16-19). The parties agree that a substantial amount of the land located within the Flowage Easement is also located within the Flood Plain, but disagree about the implications of these restrictions for development, and the value of the Property after considering the restrictions.

Lawyers Title issued four (4) title commitments to Doubletree or its representatives insuring title to the Property (Dkt. #117-7 at 49-100; Dkt. #123, Tab 8-11).  The final title commitment, effective on March 21, 2006, listed all the encumbrances, including the Flowage Easement, as exceptions from coverage in Schedule B (Dkt. #117-7 at 77-83; Dkt. #123, Tab 11).  At the closing on or about April 7, 2006, Doubletree signed a sales contract with Duvall, the vesting deed, and a lease back agreement with Duvall (Dkt. #123, Tab 7, Tab 16, Tab 17).  These documents all reference the same list of encumbrances, including the Flowage Easement, excepted from coverage on the final commitment provided to Doubletree.  *Id.*  In addition, the documents indicate that survey coverage was purchased by Doubletree, and that the coverage would be reflected in the title policy issued to Doubletree.  *Id.*

On April 18, 2006, Lawyers Title provided Doubletree with its title insurance policy (the "Original Policy") (Dkt. #117-8 at 29-38; Dkt. #123, Tab 12).  A software error in the computer system caused the Original Policy to print without listing the encumbrances as Schedule B exceptions to coverage, and failed to include the agreed-upon modification for the survey coverage purchased by Doubletree (Dkt. #123, Tab 12).  In October of 2006, Doubletree submitted a lost policy affidavit to Lawyers Title, indicating that it could not locate the Original Policy (Dkt. #117-7 at 26; Dkt. #123, Tab 20).  The Original Policy was re-printed and sent to Doubletree[3] (Dkt. #117-8 at 39-45; Dkt. #123, Tab 21).  The software error again caused the policy to print without the encumbrances listed as Schedule B exceptions, and without the agreed-upon modifications for survey coverage. *Id.*

---

[3]While the parties have adopted differing terminology for the various policies issued to Doubletree, the Court will refer to both the Original Policy and the replacement policy as "the Original Policy," since both policies are identical in all material respects.

In August 2007, Doubletree submitted a request to the City of Highland Village for a zoning change for the Property to accommodate its senior retirement community (Dkt. #123, Tab 22). During the process of obtaining the appropriate zoning, Doubletree learned of a discrepancy between the actual location of the Flowage Easement, and the "approximate location" depicted on the survey[4] (Dkt. #123, Tab 5 at 11). The original survey of the Property obtained by Doubletree indicated the "approximate location" of the Flowage Easement, which covered a small portion of the Property on the southern edge (Dkt. #117-8 at 46). In reliance on that survey, Doubletree designated that area for landscaping, or "green space," in an effort to comply with the restrictions on building within the Flowage Easement (Dkt. #117-8 at 48; Dkt. #117-8 at 55). In finding the "approximate location" of the Flowage Easement, Mark Paine ("Paine"), the surveyor, relied on flood insurance rate maps ("FIRM") (Dkt. #123, Tab 60 at 1151). Doubletree later discovered that the original survey did not depict the totality of the area encumbered by the Flowage Easement (Dkt. #117-8 at 52). Doubletree filed a complaint against Paine with the Texas Board of Professional Land Surveying (Dkt. #123, Tab 5). The Board determined that while Paine could have been more cautious when describing which document he used to locate the "approximate location" of the Flowage Easement on the survey, Paine did not violate any professional standards while conducting the survey (Dkt. #123, Tab 24). The additional area encumbered by the Flowage Easement that was not revealed on the original survey is the subject of the present dispute between the parties.

In March of 2008, Doubletree filed a claim on the title insurance policy with Lawyers Title (Dkt. #123, Tab 27). The parties dispute whether the basis of the claim made by Doubletree was for

---

[4]Doubletree never obtained the appropriate zoning for the project. After learning of the discrepancy in the survey, Doubletree withdrew its application for a zoning change and never resubmitted it for further review (Dkt. #123, Tab 22-23).

5

the discrepancy in the actual location and "approximate location" of the Flowage Easement identified

on the survey, or the eighteen (18) encumbrances not listed as Schedule B exceptions to coverage.

Relevant portions of the claim are as follows:

> Schedule B to the Owner Policy, however, includes no listed exceptions. In reliance on the insured title and pursuant to the Owner Policy, Doubletree closed on the Insured Property, paid $3,450,000.00 as the purchase price, and began plans to improve and develop the Insured Property...

> Most notable of these [exceptions] is a blanket easement across the entire Insured Property, as well as a significant flowage easement that deprives Doubletree of sufficient title to much of the Insured Property to allow development of it...

> Doubletree has been unable to proceed with its development of the Insured Property as a result of the encumbered title. For example, the presence of flowage easements on the property directly and adversely impacts the development plan of the Insured Property by Doubletree, as it divests Doubletree of exclusive title to significant portions of the Insured Property and renders the encumbered portion unusable for its intended purpose...

> As a result of the unreserved exceptions to the title to the Insured Property, Doubletree has been damaged in the amount of $850,025.00, which represents the diminished or lost value of the Insured Property for Doubletree's intended purpose... Doubletree hereby demands that, pursuant to the Owner's Policy you do these things and all others which you are required by the Owner's Policy to do:
>
> 1. Clear, to the extent possible, the exceptions to the title to the Insured Property that were not reserved by the Owner's Policy;
> 2. Indemnify Doubletree, its Mortgagee and any other subsequent owner from liability arising from the unreserved exceptions to the title to the Insured Property; and,
> 3. Tender payment to Doubletree of insurance proceeds for the diminished value of the Insured Property in the amount of $850,025.00, together with any costs attorney's fees and expenses incurred by it through the resolution of this matter.

(Dkt. #123, Tab 27). Lawyers Title asserts that it conducted an investigation of this claim; however,

Doubletree contends that Lawyers Title's investigation was insufficient and unreasonable under the

circumstances. Ultimately, based on Lawyers Title's investigation and discovery of the software

error that caused the Original Policy to print without the Schedule B exceptions to coverage, Lawyers

Title denied the claim, stating, "It is the determination of Lawyers Title that Doubletree Partners, L.P. does not have coverage for the claim asserted by Doubletree Partners, L.P." (Dkt. #117-7 at 34; Dkt. #123, Tab 28 at 233). On May 23, 2008, Doubletree requested that Lawyers Title reconsider its denial of the claim based on the fact that the final commitment received by Doubletree was no longer in force, and the title policy contained no reference to the encumbrances (Dkt. #117-7 at 36-38; Dkt. #123, Tab 29). On June 25, 2008, Lawyers Title confirmed its denial of the claim (Dkt. #117-7 at 40; Dkt. #123, Tab 30). At that time, Lawyers Title provided Doubletree with a corrected version of the Original Policy (the "Corrected Policy")[5], that included the encumbrances listed as exceptions to coverage on Schedule B, as well as the modifications for survey coverage (Dkt. #117-7 at 41-48; Dkt. #123, Tab 30).

On July 1, 2008, Lawyers Title filed suit for declaratory action against Doubletree, seeking a declaration of the parties' rights and obligations, and reformation of the Original Policy (Dkt. #1, ¶¶ 17-18). On August 16, 2010, Lawyers Title filed its Amended Complaint (Dkt. #48). On August 16, 2010, Doubletree filed its Answer and Counterclaim (Dkt. #50, Dkt. #51, Dkt. #55). On December 9, 2010, Lawyers Title filed its Amended Answer and Counterclaim for attorney's fees (Dkt. #80). In its Amended Counterclaim, Doubletree makes the following claims against Lawyers Title: breach of contract for each policy issued by Lawyers Title; declaratory relief; breach of the duty of good faith and fair dealing; violations of the Insurance Code; violations of the Texas Deceptive Trade Practices Act ("DTPA"); common law fraud; statutory fraud; and negligent misrepresentation (Dkt. #113).

---

[5]The parties have also adopted differing terminology to describe this policy; however, for the purposes of this Opinion, the Court will refer to the third policy issued by Lawyers Title and received by Doubletree as the "Corrected Policy."

On June 13, 2011, Doubletree filed its First Motion for Partial Summary Judgment (Dkt. #117). On July 12, 2011, Lawyers Title filed its Response and additional attachments (Dkt. #132; Dkt. #134). On July 26, 2011, Doubletree filed its Reply (Dkt. #153).

On June 14, 2011, Lawyers Title filed its Motion for Summary Judgment on Contract Claims and additional attachments (Dkt. #118; Dkt. #123). Doubletree filed its Response on July 12, 2011 (Dkt. #137). On July 26, 2011, Lawyers Title filed its Reply (Dkt. #146).

On June 14, 2011, Lawyers Title filed its Motion for Summary Judgment on Extra-Contractual Claims and additional attachments (Dkt. #119; Dkt. #123). Doubletree filed its response on July 12, 2011 (Dkt. #140). On July 26, 2011, Lawyers Title filed its Reply (Dkt. #147).

On June 14, 2011, Lawyers Title filed its Motion to Strike Expert Testimony of Mark McPherson (Dkt. #121). Doubletree filed its Response on July 12, 2011 (Dkt. #138). On July 26, 2011, Lawyers Title filed its Reply (Dkt. #149).

On June 14, 2011, Lawyers Title filed its Motion to Strike Expert Testimony of George "Mick" Ulakovic (Dkt. #122). Doubletree filed its Response on July 12, 2011 (Dkt. #130). On July 26, 2011, Lawyers Title filed its Reply (Dkt. #150).

On June 14, 2011, Doubletree filed its Second Motion for Partial Summary Judgment (Dkt. #125). Lawyers Title filed its Response and additional attachments on July 12, 2011 (Dkt. #133; Dkt. #134). On July 26, 2011, Doubletree filed its Reply (Dkt. #152).

On June 16, 2011, Lawyers Title filed its Motion to Strike Expert Testimony of Peter J. Phalon (Dkt. #127). Doubletree filed its Response on July 12, 2011 (Dkt. #139). On July 26, 2011, Lawyers Title filed its Reply (Dkt. #148).

On July 12, 2011, Lawyers Title filed its Objections to and Motion to Strike Summary

Judgment Evidence (Dkt. #135).  On July 26, 2011, Doubletree filed its Response (Dkt. #155).  On August 4, 2011, Lawyers Title filed its Reply (Dkt. #158).  On August 9, 2011, Doubletree filed a Sur-Reply (Dkt. #160).

On July 27, 2011, Lawyers Title filed its Second Objections to and Motion to Strike Summary Judgment Evidence (Dkt. #156).  Doubletree filed its Response on August 15, 2011 (Dkt. #161).  On August 25, 2011, Lawyers Title filed its Reply (Dkt. #162).  On September 6, 2011, Doubletree filed a Sur-Reply (Dkt. #163).

On July 29, 2011, Doubletree filed its Motion to Strike Expert Testimony of Charles Dannis (Dkt. #157).  Lawyers Title filed its Response on July 12, 2011 (Dkt. #131).  On July 26, 2011, Doubletree filed its Reply (Dkt. #154).

On September 13 and 14, 2011, the parties appeared before the undersigned and made oral arguments on the motions described above (Dkt. #164).  On September 19, 2011, Doubletree filed its Post-Hearing Brief in Support of its First Motion for Summary Judgment (Dkt. #165).  On September 23, 2011, Doubletree filed its Post-Hearing Brief in Support of its Second Motion for Summary Judgment (Dkt. #166).  On September 26, 2011, Doubletree filed its Post-Hearing Brief in Support of its Motion to Strike Charles Dannis as Expert Witness (Dkt. #167).

## ANALYSIS

### A.  *Motion to Exclude Expert Testimony of Mark McPherson*

Federal Rule of Evidence 702 requires that an expert must be qualified by "knowledge, skill, experience, training, or education."  Expert testimony must consist of "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Finally, (1) the testimony must be based on sufficient facts or

data, (2) the testimony must be the product of reliable principles and methods, and (3) the witness must apply the principles and methods reliably to the facts of the case. *Id.*

"The [Federal] Rules of Evidence - especially Rule 702 - assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Vanderbilt Mortg. & Fin., Inc. v. Flores,* No. C-09-312, 2010 U.S. Dist. LEXIS 116434, at *7 (S.D. Tex. Nov. 1, 2010) (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993)). The Court must act as a gatekeeper and make a preliminary assessment of whether the admissibility requirements are met before allowing an expert to testify. *Daubert*, 509 U.S. at 592-93. The Court's gatekeeper function applies to all expert testimony, not just testimony based in science. *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000).

Lawyers Title moves to exclude the expert testimony of Mark McPherson ("McPherson"), an attorney hired by Doubletree to testify regarding the trade usage of terms like "flowage easement," "flood plain," and "created, suffered, assumed or agreed to," and to assist the Court and jury as they evaluate the evidence in this case (Dkt. #138 at 4). Lawyers Title argues that the Court should not allow McPherson to testify because (1) his opinions are legal conclusions that are not properly the subject of expert testimony, (2) his opinions are not framed in terms of trade usage, and he is not qualified to testify about trade usage in the title insurance industry, and (3) his opinions are neither reliable nor relevant (Dkt. #121 at 4-5).

McPherson's expert report describes a typical real estate purchase transaction; however, interspersed throughout the report are McPherson's own conclusions and opinions on the legal issues. For example, McPherson states:

> The title policy in effect that covers the loss of [Doubletree] in this case is the [Original Policy]... State law only provides limited ways to affect title insurance coverage after a policy

has been issued... Under state law, a contract requires mutual agreement of the parties to the contract. [Doubletree] did not ask for or agree to the materially different terms of the [Corrected Policy]... Therefore, the [Corrected Policy] does not come within the definition of "policy."

(Dkt. #123, Tab 56 at 829-830). This is just one example of the legal conclusions that permeate McPherson's report. McPherson offers a legal conclusion for almost every disputed issue in the case, such as which policy is effective between the parties, and which provisions of the policy ensure that Doubletree is entitled to coverage.

Experts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the Court. *Fisher v. Halliburton*, No. H-05-1731, 2009 U.S. Dist. LEXIS 118486, at *14 (S.D. Tex. Dec. 21, 2009) (citing *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)); see also *Goodman v. Harris Cnty*, 571 F.3d 388, 399 (5th Cir. 2009) ("An expert may never render conclusions of law."). "Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). "There is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Askanase*, 130 F.3d at 673. In addition, an expert should not be permitted to give opinions that reiterate what the lawyers offer in argument. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (citation omitted).

Doubletree asserts that Federal Rule of Evidence 704 allows McPherson to testify regarding ultimate issues of fact. Fed. R. Evid. 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, Fed. R. Evid. 704 does not open the door to all opinions. *Owen*, 698 F.2d at 240. The rule is not intended to allow witnesses to give legal conclusions or tell

the jury what result to reach. *Id.* Further, the interpretation of a contract is a question of law for the Court to decide. *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000).

Doubletree also contends that McPherson's testimony is admissible because he construes terms within the contract that have a specialized meaning in the industry, such as "flowage easement," "flood plain," and "created, suffered, assumed, or agreed to" (Dkt. #138 at 11). Doubletree asserts that McPherson's testimony is needed to refute the testimony of two of Lawyers Title's expert witnesses. *Id.* at 14. Expert testimony on the issue of trade usage is admissible to "illuminate the context for the parties' contract negotiations and agreements." *Sparton Corp. v. U.S.*, 77 Fed. Cl. 1, 8 (Fed. Cl. 2007) (citation omitted). However, neither Doubletree nor McPherson ascribes any specialized meaning to the terms described above that are specific to the title insurance industry. Both parties contend that the plain meaning of the contract language should prevail; however, they simply disagree about what the plain meaning of the terms should be. McPherson merely advances Doubletree's counsel's primary argument for interpretation of the terms of the contract. "In the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language." *Id.*

Finally, Lawyers Title has offered no expert testimony, by any designated expert witness or otherwise, to enhance their argument regarding interpretation of the contract terms. Doubletree does not need McPherson's testimony to make arguments regarding the interpretation of the contract terms. Doubletree's counsel may make such arguments in briefs or in argument before the Court, which they have already done.

The Court finds McPherson's testimony is primarily composed of legal conclusions, which

are not properly the subject of expert testimony. Based on the foregoing, the motion to strike the expert testimony of Mark McPherson should be granted as to those portions of his expert report that contain improper legal conclusions.

The following portions of the Expert Report of Mark McPherson shall be struck: (1) Section II, Part A - Summary; (2) Section II, Part B, Item 3, the last two sentences stating, "Generally, a buyer will not object when a title insurance company removes items from the Exceptions when it issues the title policy, regardless of why the title insurance company removed the Exception(s). Removing Exceptions will generally result in better title insurance policy coverage, because the policy will cover more risks of loss as compared to the title commitment;" (3) Section II, Part B, Section 5, the last sentence stating, "It generally means that the title insurance policy will not cover losses caused by any of these conditions, and other than shortages in area, these conditions are conditions that a current, accurate survey would show;" (4) Section II, Part B, Section 6, paragraph two beginning, "When a party purchases Survey Coverage..." until the end of section 6; (5) Section II, Part B, Section 10, footnote 10; (6) Section II, Part C entitled, "Certain Issues Unique to Doubletree Ranch," in its entirety, including footnotes; (7) Section II, Part D entitled, "Which Title Policy is Effective in this Case?" in its entirety, including footnotes; (8) Section II, Part E entitled, "Doubletree Partners' Loss and Claim," in its entirety, including footnotes; and (9) Section II, Part F entitled, "Lawyers Title Insurance Corporation's Denial of the Claim and Alleged Defense," in its entirety, including footnotes.

Rule 56(c) requires affidavits to "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c). Therefore, for the same reasons listed above, the following should be struck from the Affidavit of Mark McPherson: (1) Paragraph 8, first sentence, "Doubletree sought survey

13

coverage ("Survey Coverage") to protect against title problems not shown on the Survey;" (2) Paragraph 9, second sentence, "This depiction of the Flowage Easement led to the Claim;" (3) Paragraph 11; (4) Paragraph 13; (5) Paragraph 14; (6) Paragraphs 16-19; (7) Paragraph 23, Subpoint B; (8) Paragraph 24; and (9) Paragraphs 27-43. The following should also be struck from the Second Affidavit of Mark McPherson: (1) Paragraphs 7-9.

## B.  Lawyers Title and Doubletree's Cross Motions for Summary Judgment on Contract Claims [6]

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of

---

[6] If the Court relies on any evidence that is the subject of one of the parties' remaining motions to strike during its consideration of the parties' motions for summary judgment, the Court will consider the admissibility of the disputed evidence at that time.

the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257.

Both parties have moved for summary judgment on the contract issues (Dkt. #117, 118, 125). Lawyers Title argues that under the plain meaning of the language in the contract, both policies exclude coverage for any title defects or encumbrances "created, suffered, assumed, or agreed to by [Doubletree]" ("Exclusion 3(a)"). Lawyers Title asserts that Doubletree had actual knowledge of the Flowage Easement when it took title to the property, possessed the record document from which it could evaluate the extent of the Flowage Easement, and still chose to accept title subject to the Flowage Easement.

In the alternative, Lawyers Title argues the Corrected Policy should govern the agreement between the parties. Lawyers Title asserts that the Original Policy was the result of a mutual mistake between the parties, and should be reformed in accordance with the true agreement between the parties. Lawyers Title argues that the policies issued to Doubletree mistakenly printed without the Schedule B exceptions attached, and Doubletree had knowledge of the mistake made by Lawyers Title. Further, Lawyers Title asserts that the Corrected Policy, the true agreement between the parties, excludes the Flowage Easement from coverage in Schedule B. Lawyers Title contends that survey coverage typically provides coverage for non-record claims of title tied to boundary lines,

encroachments, and overlaps, and does not provide the type of coverage Doubletree claims it has under the policy. Lawyers Title further asserts that the Corrected Policy excludes the Flowage Easement from coverage although it adds the language "and shown on survey..." to the exception, which Lawyers Title argues merely expands the exception to include the easement as described in the recorded instrument and as the easement is shown on the survey. Finally, Lawyers Title argues that Doubletree cannot recover damages because they are limited to diminution in value, and Doubletree cannot establish compensable damages because it cannot establish that the damages were caused solely by the Flowage Easement.

In its First Motion for Summary Judgment, Doubletree argues that it purchased survey coverage in its insurance policy, which shifted the risk of loss for title issues not shown on the survey from Doubletree to Lawyers Title. Doubletree asserts that Exclusion 3(a) does not apply to the Flowage Easement because it did not create, suffer, assume, or agree to the Flowage Easement. Doubletree argues that because it took title "subject to" known defects in title, then the Flowage Easement cannot be excluded from coverage on the basis of Exclusion 3(a). Further, Doubletree argues that the Flowage Easement cannot be excluded from coverage because it was a claim attaching or created after the date of policy. Doubletree asserts that the claim was properly brought, and the subject matter of the claim was the undisclosed location of the Flowage Easement. Doubletree contends that its claim was not extinguished at the time of foreclosure because the claim was properly brought prior to the foreclosure of the Property. Further, Doubletree argues that if the Corrected Policy is the only policy in effect, then that policy covers Doubletree's claim because the exception for the Flowage Easement includes the language "and shown on survey." Doubletree argues that this language creates a double threshold that allows the Flowage Easement to be excluded

16

from coverage only to the extent that it is shown on the survey.

In its Second Motion for Summary Judgment, Doubletree asserts that it is entitled to summary judgment on Lawyers Title's request for declaratory relief because Exclusion 3(a) does not apply since Doubletree did not "create, suffer, assume or agree to" the undisclosed portion of the easement. Further, Doubletree asserts that the best evidence of the true agreement of the parties is the language of the policy that was actually issued by Lawyers Title. Doubletree asserts that the parties did not intend the title commitment to remain in force, and therefore the Court should not consider the document. Doubletree argues that it is entitled to summary judgment on Lawyers Title's claim of reformation because Lawyers Title has no evidence in support of reformation. Doubletree asserts that it is entitled to summary judgment on all of Lawyers Title's affirmative defenses because there is no genuine issue as to any material fact, the defenses do not apply, and there is no evidence. Finally, Doubletree argues that it is entitled to summary judgment on its claims of breach of contract for all three policies issued by Lawyers Title because there is no genuine issue of material fact.

The issues the Court must determine relating to the parties' coverage under the title insurance policy are as follows: (1) Does Exclusion 3(a) bar coverage of Doubletree's claim? (2) Which policy controls the agreement of the parties? (3) Do any provisions of the controlling policy operate to bar coverage of Doubletree's claim?

### i. Does Exclusion 3(a) bar coverage of Doubletree's claim?

Under Texas law, "insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010) (citation omitted). The Court must interpret the contract to discern the

intention of the parties as it is expressed in the policy. *Id*. When the disputed provision is an exclusion, the insurer bears the burden of establishing the exclusion applies. *Id*. (citing *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998)). Whether a contract is ambiguous is also a question of law. *Id*. (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)). An ambiguity is not present simply because the parties advance conflicting interpretations, but exists "only if the contractual language is susceptible to two or more reasonable interpretations." *Id*. (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). If the language in the policy is ambiguous, we construe it "strictly against the insurer and liberally in favor of the insured." *Id*. at 562-63 (citation omitted). "Consequently, we must adopt the 'construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Id*. (citation omitted).

All three policies at issue in the present case contain the same insuring provision, which states:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, Lawyers Title Insurance Corporation...insures, as of Date of Policy shown in Schedule A, against loss or damage... sustained or incurred by the insured by reason of:
> 1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
> 2. Any defect in or lien or encumbrance on the title;...
> 5. Lack of good and indefeasible title.

(Dkt. #123, Tab 12). Following the insuring provision in all three policies is a list of exclusions from coverage, which in relevant part states:

> The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise

> by reason of:
> 3. Defects, liens, encumbrances, adverse claims or other matters:
>     (a) created, suffered, assumed or agreed to by the insured claimant.

*Id*. Lawyers Title argues that Exclusion 3(a) applies to preclude coverage of Doubletree's claim for the undisclosed magnitude of the Flowage Easement because Doubletree suffered, assumed, and/or agreed to the Flowage Easement as a restriction of title.[7]

Lawyers Title does not argue that Doubletree "created" the Flowage Easement, so the Court will consider only the terms "suffered," "assumed," and "agreed to." Courts have interpreted "suffered" as used in Exclusion 3(a) to mean "permit." *Murnan Spring Hill Trust v. Stewart Title Guar. Co.*, 374 Fed. App'x 459, 461 (4th Cir. 2010); *Ticor Title Ins. Co. Of California v. FFCA/IIP 1988 Property Co.*, 898 F. Supp. 633, 639 (N.D. Indiana July 5, 1995) (citing *Am. Sav. and Loan v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 784 (6th Cir. 1986)). The term suffered "implies that an insured person has the authority or power to prohibit or prevent a lien or defect, which power has not been exercised, even though the insured has full knowledge of what is to be done or the intention that it be done." Barlow Burke, *Law of Title Insurance*, L. TITLE INS. § 4.04 (2010). "'Assume' requires knowledge of the specific title defect assumed... and 'agreed to' carries connotations of 'contracted,' requiring full knowledge by the insured of the extent and amount of the claim against the insured's title." *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, No. 05-281, 2011 WL 611802, at *22 (E.D. Penn. Feb. 17, 2011) (citing *Am. Sav. and Loan*, 793 F.2d at 784.) All three of these terms require some degree of intent to acquire the defect in title. *Id*. Exclusion 3(a) has been held applicable to "relieve the insurer of any liability in cases where the insured either expressly or impliedly assumed or agreed to various defects, liens, or encumbrances in the course

---

[7] The Court will assume at this point in the analysis, without deciding, that the undisclosed magnitude of the Flowage Easement was, in fact, the subject matter of Doubletree's original claim to Lawyers Title.

of purchasing the property involved." *Id.*, at *21.

Doubletree fully intended to acquire the Flowage Easement as an encumbrance to title in the course of purchasing the Property. Doubletree was aware of the Flowage Easement as a defect in title, received copies of the recorded document constituting the Flowage Easement, and confirmed its awareness of the Flowage Easement in its acceptance of the final commitment from Lawyers Title, the vesting deed, and the lease agreement (Dkt. #123, Tab 11; Dkt. #123, Tab 16; Dkt. #123, Tab 17). Doubletree clearly "suffered" or permitted the Flowage Easement as an encumbrance on its title, since it did not exercise its power to not complete the sale or attempt to remove it as an encumbrance. Further, Doubletree had full knowledge of what was to be done, that is that Doubletree knew it would receive title to the Property encumbered by the Flowage Easement as listed in the recorded document. The fact that the survey depicted the "approximate location" of the Flowage Easement, which was different from the actual location, does not alter the fact that Doubletree still took title to the property as it was listed in the recorded document. In addition, Doubletree "assumed" the Flowage Easement, within the meaning of the term as defined in the context of Exclusion 3(a). Doubletree took title to the Property with knowledge of the specific title defect. Finally, Exclusion 3(a) applies to bar coverage because Doubletree, the insured, expressly assumed or agreed to the encumbrance on title in the course of purchasing the Property.

Doubletree asserts that the Court is required to "adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent (Dkt. #165 at 10 (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)). However, this rule of construction only applies when the Court determines that the provisions of the contract

are ambiguous, or susceptible to more than one construction. *Barnett,* 723 S.W.2d at 665. That is not the case here, and this requirement does not apply.

Doubletree argues that their knowledge of the Flowage Easement's existence is irrelevant to the determination of whether they suffered, assumed, or agreed to the encumbrance on title; however, this argument is misplaced. Doubletree's knowledge is relevant to determining their intent to purchase the property encumbered by the Flowage Easement. Therefore, it is irrelevant that the policy defines the term "knowledge" as actual knowledge. However, the Court finds that Doubletree had actual knowledge of the existence Flowage Easement because it received copies of the recorded document describing the Flowage Easement. In addition, Doubletree knew that the survey depicted an "approximate location" of the Flowage Easement, and at no time prior to the discovery of the alleged error did it question or attempt to clarify the exact location of the Flowage Easement. Doubletree's actual knowledge of the existence Flowage Easement confirms its intent to purchase the property encumbered by the Flowage Easement.

Doubletree also argues that it took the Property subject to the Flowage Easement without expressly assuming any defects in title. Doubletree argues:

> a grantee does not become personally liable for the encumbrance (because this type of conveyance is distinctly different from an assumption). Subject to are words of limitation and qualification (such as "limited by"); they are not contractual. There is nothing in the use of the words subject to... which would even hint at the creation of affirmative rights. Conveying title subject to gives notice, which is acknowledged by a grantee; it does not operate as an acknowledgment of validity, and a grantee is free to challenge the subject defect.

(Dkt. #165 at 6). The Court agrees with Doubletree's characterization of the case law regarding the term "subject to" as it relates to real estate transactions, particularly those involving mortgages. The warranty deed in this case states:

21

this Warranty Deed and the conveyance hereinabove set forth is executed by Grantor and accepted by Grantee subject to the matters described in EXHIBIT 'B' attached hereto and incorporated herein by reference for all purposes, but only to the extent they affect or relate to the Property (hereinafter referred to as the 'Permitted Encumbrances').

(Dkt. #123, Tab 16 at 155). First, the fact that the warranty deed itself lists the encumbrances as "permitted encumbrances" lends further support to the argument that Doubletree "suffered" the Flowage Easement by permitting it as a defect in title. Further, Texas courts have held that when a warranty deed expressly states that it is made "subject to" encumbrances on the property, and that encumbrance is recorded, then in the context of Exclusion 3(a), the grantee has "assumed or agreed to" that encumbrance. *Duncan v. First Am. Title Ins. Co.*, No. C14-93-171-CV, 1994 Tex. App. LEXIS 20, at *12 (Tex. App. - Houston [14th Dist.] Jan 6, 1994, no writ).

Finally, Doubletree argues that it "suffered, assumed, or agreed to" the Flowage Easement only to the extent that it was shown on the survey. However, this argument fails for two reasons. First, exhibit B to the warranty deed lists the Flowage Easement as follows:

3. Flowage easement awarded to The United States of America in Condemnation Proceedings in U.S. District Court for the Eastern District of Texas, Sherman Division, under Cause No. 692, by Final Judgment dated November 18, 1955, a certified copy of which has been filed on January 10, 1956, recorded in Volume 418, page 372, Real Property Records, Denton County, Texas, and shown on survey dated March 22, 2006 by Mark Paine, RPLS #5078.

(Dkt. #123, Tab 12 at 162). According to the plain meaning of the words in the warranty deed, the exception includes both the Flowage Easement recorded in the real property records in Denton County, AND the Flowage Easement shown on the survey. Both descriptions of the Flowage Easement are a permitted encumbrance "suffered" and "assumed" by Doubletree. Second, Lawyers Title argues, and Doubletree does not refute, that the Flowage Easement constitutes a defect in title. The question for purposes of Exclusion 3(a) is whether Doubletree suffered, assumed, or agreed to

the Flowage Easement as a title defect, which is the only thing the policy insures against. The Court agrees that the insuring provision of the policies insures Doubletree for losses only related to loss or damage to Doubletree's title (Dkt. #123, Tab 30) (loss or damage caused by reason of (a) *title* to the estate or interest being vested other than as stated, (b) defects, liens or encumbrances on *title*, and (d) lack of good and indefeasible *title*). Doubletree "suffered" and "assumed" the Flowage Easement as a defect in title to the Property, and the failure of the surveyor to disclose the magnitude of the Flowage Easement is not something for which the insuring provision provides coverage.

### ii. Which policy controls the agreement of the parties?

Lawyers Title asserts that the Original Policy should be reformed to reflect the true agreement between the parties. "The underlying objective of reformation is to correct a mutual mistake made in preparing a written instrument, so that the instrument truly reflects the original agreement of the parties." *Givens v. Ward*, 272 S.W.3d 63, 67 (Tex. App. – Waco 2008, no pet.) (citing *Cherokee Water Co v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987)). In order to reform a written contract, the party seeking reformation must satisfy a two-part test: (1) an original agreement exists between the parties, and (2) a mutual mistake occurred, made after the original agreement, in reducing the agreement to writing. *Id*. A "unilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake." *Id*.

Doubletree does not dispute Lawyers Title's assertion that the parties had an agreement; in fact, the agreement between the parties is indicated by the commitments issued to Doubletree (Dkt. #123, Tab 8; Dkt. #123, Tab 9; Dkt. #123, Tab 10; Dkt. #123, Tab 11). The agreement between the parties clearly included the survey coverage purchased by Doubletree, as well as the Schedule B exceptions contained in the final commitment (Dkt. #123, Tab 11). In its response, Doubletree does

not dispute that the policy issued mistakenly without the Schedule B exceptions or the survey coverage. Doubletree merely asserts that it did not intend to capitalize on the mistake made by Lawyers Title. At the hearing, counsel for Doubletree indicated to the Court that sometimes a change in terms can be negotiated between the issuing of the final commitment and the title policy. Doubletree contends that it received a better policy than it expected to receive, and did nothing to remedy the error.

A unilateral mistake occurred when Lawyers Title printed and issued the policy without including the previously purchased survey coverage, and without including the Schedule B exceptions to coverage. Doubletree clearly had knowledge of this mistake, since it paid an additional premium (plus the cost of a survey) to obtain the added survey coverage that was not included in the title policy it received. Further, Doubletree submitted a claim on the policy for the error, again demonstrating their knowledge of the mistake by Lawyers Title. The title policy received by Doubletree was not a true reflection of the agreement of the parties. Therefore, the Court finds that reformation of the policy is appropriate, and finds the third policy issued by Lawyers Title, the Corrected Policy, is the policy governing the agreement between the parties.

### iii. Do any provisions of the controlling policy operate to bar coverage of Doubletree's claim?

The Corrected Policy contains the same insuring provision and exclusions as the prior policies (Dkt. #123, Tab 30). Therefore, coverage for Doubletree's claim is excluded regardless of the policy under Exclusion 3(a), as discussed above. However, the Corrected Policy includes the survey coverage purchased by Doubletree, which is indicated on Schedule B and states:

> This policy does not insure against loss or damage... that arise by reason of the terms and conditions of the leases or easements insured, if any, shown in Schedule A and the following matters:

2. Shortages in area.

(Dkt. #123, Tab 30). In the original policy, that exception excluded coverage for, "any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements" (Dkt. #123, Tab 12). However, for a payment of an additional premium and survey, the language is changed to exclude only shortages in area.

The Corrected Policy also includes the following language:

This policy does not insure against loss or damage... that arise by reason of the terms and conditions of the leases or easements insured, if any, shown in Schedule A and the following matters:
6. The following matters and all terms of the documents creating or offering evidence of the matters...:
f. Flowage easement awarded to The United States of America in Condemnation Proceedings in U.S. District Court for the Eastern District of Texas, Sherman Division, under Cause No. 692, by Final Judgment dated November 18, 1955, a certified copy of which has been filed on January 10, 1956, recorded in Volume 418, page 372, Real Property Records, Denton County, Texas, and shown on survey dated March 22, 2006 by Mark Paine, RPLS #5078.

(Dkt. #123, Tab 30).

Doubletree argues that the purchase of survey coverage entitles it to coverage for all errors in the survey, since survey coverage necessarily requires the Court to assume that Lawyers Title agreed to insure the accuracy of the survey. Additionally, Doubletree argues that the Flowage Easement is only excluded to the extent that it is depicted on the survey. Lawyers Title argues that survey coverage is not intended to cover any alleged errors in the survey, that the type of title insurance that Doubletree suggests it has is not available in Texas, and that the exception for the Flowage Easement included on Schedule B clearly excludes the Flowage Easement from coverage.

There is no affirmative language in the insuring provision or anywhere in the Corrected

Policy that grants coverage to Doubletree for the accuracy of the survey.[8]   The deletion or

modification of an exception to coverage does not create coverage where no coverage exists.  Burke,

L. Title Ins. § 9.01 (2010); *First Am. Title Ins. Co. v. Dahlmann*, 715 N.W.2d 609, 618 (Wis. 2006).

The deletion of the words "any discrepancies, conflicts, or shortages in area or boundary lines, or any

encroachments or protrusions, or any overlapping of improvements" does not mean that all errors

in the survey are now covered by the title insurance policy.  The Court agrees with Lawyers Title that

the plain language of the contract shows that the deletion of the above language means that any title

defects that result from discrepancies or conflicts in boundary lines, any encroachments or

protrusions, or any overlapping of improvements may now be covered by the title insurance policy,

subject to the other exclusions and exceptions from the policy.  The error in depicting the Flowage

Easement is not a discrepancy or conflict in a boundary line, encroachment, protrusion, or

overlapping of improvements.[9]

Further, Texas law does not allow for coverage of the type claimed by Doubletree.  Under

the Texas Title Insurance Act, a title insurance company may not use a form of title insurance unless

the Texas Department of Insurance has prescribed and approved the form.  Tex. Ins. Code §

2703.002.  Doubletree has not provided the Court with any indication that this type of title insurance

---

[8]  It is also worth noting that Doubletree has not proven that there was an actual error in the survey in the depiction of the Flowage Easement.  While it is clear that the surveyor did not locate the exact location of the Flowage Easement, he did clearly indicate on the survey the "approximate" location of the Flowage Easement.  Further, when Doubletree made a claim to the Texas Board of Professional Land Surveyors regarding the surveyor's action, the Board noted that the surveyor did not commit an error in locating the Flowage Easement (Dkt. #123, Tab 24).  The Board stated that using FEMA/FIRM information was sufficient; however, in the future best practice required the surveyor to notate a reference to the source he used in locating the easement to avoid future confusion.

[9] Whether the Flowage Easement is an encroachment or not is irrelevant, since mere deletion of the language in the exception does not create affirmative coverage under the policy.  Further, coverage of the Flowage Easement is excluded under Exclusion 3(a), and the Flowage Easement is also excepted from coverage in Schedule B.  Therefore, the Court will not discuss whether the Flowage Easement is an encroachment.

is available in Texas, nor refuted Lawyers Title's assertion that it is not available in Texas. Based on the Court's review of the information provided by Lawyers Title, it found no form prescribed or approved by the Texas Department of Insurance indicating that title insurers in Texas may provide coverage insuring the accuracy of the survey, although such forms are available in other jurisdictions.[10]

Finally, the Corrected Policy specifically excepts coverage for the Flowage Easement, indicated by the following language in Schedule B: "This policy does not insure against loss or damage... that arise by reason of... the following matters and all terms of the documents creating or offering evidence of the matters" (Dkt. #123, Tab 30). The policy then lists the Flowage Easement as recited above. The Court finds that under the plain language of the contract between the parties, the Flowage Easement is clearly excepted from coverage.

Doubletree argues that the language "and shown on survey" means that the Flowage Easement is excepted only to the extent that it is shown on the survey. However, in order to accept this argument, the Court would have to disregard the fact that Schedule B was clearly intended to except "the following matters and *all terms of the documents creating or offering evidence of the matters*" (Dkt. #123, Tab 30, emphasis added). The exception itself lists both the final judgment creating the Flowage Easement, and the recorded Flowage Easement in the real property records. In addition, as discussed above, the plain language of the meaning of the word "and" indicates that the exception was intended to exclude both the Flowage Easement described in the recorded documents **AND** the description of the Flowage Easement located on the survey. It is not necessary that those descriptions be the same, but it is clear that both are excepted from title insurance

_____

[10]Lack of such insurance in Texas, despite its availability in other jurisdictions, indicates that the exclusion is deliberate.

coverage. Because the recorded documents contain the accurate description of the Flowage Easement, and this description is excepted, there can be no coverage under the policy for the undisclosed magnitude of the Flowage Easement. Further, it is clear that if the parties had intended the exception to exclude the Flowage Easement only as it was depicted on the survey, then the language "as shown on survey" would have been added to the exception as it was with the fences and decks exception.

Again, Doubletree argues that the Court must adopt its construction of the terms as long as they are reasonable; however, this is only when the contract language is susceptible to more than one reasonable construction. *Kelly Assocs, v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex. 1984). That is not the case here.[11]

### *iv. Conclusion*

Doubletree asserted a counterclaim against Lawyers Title for breach of contract of all three policies, and a counterclaim for declaratory judgment asking the Court to declare the policy provides coverage for the Flowage Easement. The Court finds that Lawyers Title's Motion for Summary Judgment on Contract Claims and Brief in Support (Dkt. #118) should be granted. Doubletree's First Motion for Partial Summary Judgment and Brief in Support (Dkt. #117) moves for summary judgment on Doubletree's counterclaim for declaratory judgment, and should be denied. Since Doubletree, the movant, bears the burden of proof on the counterclaim for declaratory judgment, on which it is moving for summary judgment, it must come forward with evidence that establishes

---

[11]Since the Court found that there was no coverage for Doubletree's claim on two separate grounds of Lawyers Title's Motion for Summary Judgment, it is unnecessary to consider the issue of whether Doubletree can sufficiently prove damages. Further, it is also unnecessary to consider the Motion to Strike the Expert Testimony of Peter J. Phalon and the Motion to Strike the Expert Testimony of Charles Dannis, since their testimony relates only to the issue of damages and value of the property in question. The Court did not consider this evidence in ruling on the parties' motions for summary judgment, and these motions will be denied as moot.

"beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot,* 780 F.2d at 1194. Doubletree cannot show beyond peradventure all the essential elements of its claim, and it should be dismissed.

In its Second Motion for Summary Judgment, Doubletree moves for summary judgment on its counterclaim for breach of contract.[12] In order to establish an action for breach of contract, Doubletree must establish: (1) that it complied with all conditions and requirements of the title policy; (2) the claim was covered by the policy; (3) that it suffered a compensable loss; and (4) that Lawyers Title breached by failing to pay the claim. *Marketshare Telecom, L.L.C. v. Ericsson, Inc.,* 198 S.W.3d 908, 923 (Tex. App. – Dallas 2006, no pet.) (citation omitted). As discussed above, Doubletree's claim was not covered by the policy, and Lawyers Title did not breach the policy by failing to pay the claim.[13] Therefore, no breach of contract occurred, and this claim should be dismissed. Further, to the extent Doubletree asserts that Lawyers Title's claim for reformation is not supported by sufficient evidence, that claim is dismissed.

Finally, Doubletree moves for summary judgment on a number of Lawyers Title's affirmative defenses. Doubletree merely asserts as to each of these affirmative defenses that no evidence exists to support them. However, there is substantial evidence in the summary judgment record to indicate Exclusions 1(a), 1(b), and 3(a) apply to preclude coverage for Doubletree's claim.[14] The remaining affirmative defenses relating to contract issues are Exclusion 4 - the Marketability Exclusion,

---

[12]Although Doubletree asserts a separate breach of contract claim for each of the three policies, the Court will consider only one claim for breach of contract under the Corrected Policy, since that is the policy determined to be effective between the parties.

[13]Nor could Lawyers Title breach any of the policies by failing to pay the claim, because Doubletree's claim was simply not covered.

[14]Lawyers Title concedes that the post-policy exclusion, 3(b) does not apply.

termination of coverage, lack of notice and proof of loss, and concurrent causation. However, these arguments are irrelevant, since the Court found that Doubletree's claim was barred by Exclusion 3(a), as well as Schedule B of the Corrected Policy. Therefore, Doubletree's Second Motion for Summary Judgment on these claims should be denied and the claims dismissed.

### C. Lawyers Title and Doubletree's Cross Motions for Summary Judgment on Extra-Contractual Claims

In addition to its counterclaims for breach of contract and declaratory judgment, Doubletree also filed the following extra-contractual claims: (1) breach of the duty of good faith and fair dealing; (2) violations of the Texas Insurance Code; (3) negligent misrepresentation; (4) common law fraud; (5) statutory fraud; and (6) violations of the Texas Deceptive Trade Practices Act ("DTPA"). Both parties have filed cross motions for summary judgment on these claims (Dkt. #119; Dkt. #125).

#### i. Breach of the Duty of Good Faith and Fair Dealing

Doubletree asserts that Lawyers Title breached its duty by denying the claim when liability was reasonably clear, purporting to "time-travel" for the purpose of rewriting its insurance policy, and an ordinarily prudent insurer would have met the demand made by Doubletree in its original claim (Dkt. #125 at 24). Doubletree also asserts that Lawyers Title's complete failure to address the inaccuracies in the survey, making a wrong assumption regarding Doubletree's true claim, "gaming of the system... (in an obvious and misguided effort to dodge coverage)," suing its own insured without conducting an investigation, providing an explanation of the denial, or attempting to settle in good faith, and permitting the foreclosure of the Property (Dkt. #166 at 10-11).

The duty of good faith and fair dealing in the insurance context arises from the special relationship created between the insurer and the insured. *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 283 (Tex. 1994). In order to prove breach of the duty of good faith and fair dealing,

30

Doubletree must show that: (1) Lawyers Title breached its duty by denying the claim when its liability was reasonably clear; (2) proximate causation; and (3) damages. *Id*.; *Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597, 600 (Tex. 1993). To establish the breach, Doubletree must prove that Lawyers Title lacked a reasonable basis for denying the claim. *Aranda v. Ins. Co. of North America*, 748 S.W.2d 210, 213 (Tex. 1988). This element "requires an objective determination of whether a reasonable insurer under similar circumstances would have... denied the [claim]." *Id*. Additionally, Doubletree must prove that Lawyers Title knew or should have known that there was no reasonable basis for denying the claim. *Id*.

Doubletree does not refute any of Lawyers Title's arguments, nor direct the Court to any evidence that attempts to meet the test stated above. The Court held that there was no coverage for Doubletree's claim under the title insurance policy in its discussion of the contract claims above. Therefore, in denying the claim, Lawyers Title clearly had a reasonable basis for that denial. Doubletree does not attempt to argue or show with evidence that Lawyers Title knew or should have known that there was no reasonable basis for denying the claim. Finally, in order to recover for breach of the duty of good faith and fair dealing, Doubletree must first establish that Lawyers Title breached the contract. *Interspan Dist. Corp. v. Liberty Ins. Underwriters Inc*., No. H-07-1078, 2009 U.S. Dist. LEXIS 74236, n.28 (S.D. Tex. Aug. 21, 2009) ("Under Texas law, whether the insurer has breached the contract of insurance and whether the insurer breached the duty of good faith in denying coverage are separate causes of action, and the viability of the latter is contingent on proof of the former."); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). Since there was no breach of the insurance contract, then there can be no breach of the duty of good faith and fair dealing.

### ii. *Violations of the Texas Insurance Code*

Doubletree argues that Lawyers Title violated the following provisions of the Texas Insurance Code: (1) making, issuing, and circulating statements which misrepresented the terms of the policy, in violation of § 541.051(1)(A); (2) misrepresenting the benefits or advantages promised by the policy, in violation of § 541.051(1)(B); (3) misrepresenting a material fact or policy provision relating to a coverage issue under the policy, in violation of § 541.060(a)(1); (4) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim under the policy, in violation of § 541.060(a)(2); (5) failing to promptly provide a reasonable explanation of the basis for the denial of the claim, in violation of § 541.060(a)(3); (6) refusing to pay the claim without conducting a reasonable investigation with respect to it, in violation of § 541.060(a)(7); (7) making an untrue statement of material fact in connection with the policy, in violation of § 541.061(1); (8) failing to state a material fact necessary to make other statements not misleading, considering the circumstances under which the statements were made, in connection with the policy, in violation of § 541.061(2); (9) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of material fact in connection with the policy, in violation of § 541.061(3); and (10) making a material misstatement of law in connection with the policy, in violation of § 541.061(5) (Dkt. #113 at 23-25; Dkt. #119 at 5-6). Lawyers Title moved for summary judgment on all of these claims, and Doubletree moved for summary judgment only on claims (4), (5), and (6).

To recover for these violations, Doubletree must prove that Lawyers Title engaged in one of the acts or practices, and that the conduct was the producing cause of Doubletree's actual damages. Tex. Ins. Code § 541.151. The Court will first address those claims related in some way to alleged

misrepresentations made by Lawyers Title. Doubletree asserts that Lawyers Title made misrepresentations regarding "the shelf life of the commitment, the ability to rewrite coverage after an incurred loss and a covered claim, and the very nature of survey coverage" (Dkt. #140 at 14-17). These misrepresentations are the basis of every violation of the insurance code alleged by Doubletree. In support of its motion, Doubletree directs the Court to consider the earnest money contract dated April 7, 2006, and the four title commitments issued by Lawyers Title (Dkt. #123, Tab 7-11).

The commitments all contain the following statement, which is the basis of Doubletree's misrepresentation claim: "In the interest of providing you with a more complete title insurance policy, if a qualifying survey has been required by your lender, we will collect the appropriate premium from you... and amend your title insurance policy to insure you against loss because of discrepancies or conflicts in boundary lines, encroachments or protrusions, or overlapping of improvements, excluding from the coverage specific matters disclosed by the survey" (Dkt. #123, Tab 7-11). This statement is simply not a misrepresentation. This statement is a description of precisely the coverage that Lawyers Title gave Doubletree under the terms of their agreement. The Corrected Policy, which is the controlling agreement between the parties, gives Doubletree this coverage by modifying the Schedule B survey exception to exclude only shortages in area. Further, if Doubletree is now attempting to claim that Lawyers Title misrepresented the policy because the Flowage Easement was not covered under the policy, that is also not a misrepresentation. A disagreement about the meaning or interpretation of the terms of a contract are not actionable misrepresentations. *Escajeda v. Cigna Ins. Co. of Texas*, 934 S.W.2d 402, 407-08 (Tex. App. – Amarillo 1996, no writ). In addition, it is not possible that Doubletree could have relied on these

documents to assume that the Flowage Easement would be covered by the policy,[15] because it is clear after review that each document clearly excepted the Flowage Easement as described in the recorded document from coverage under the policy.

In addition, there was no misrepresentation regarding the "shelf life" of the commitment, or the "ability to rewrite coverage after an incurred loss and a covered claim." Throughout the written briefs and materials submitted to the Court, Lawyers Title has never claimed that the final title commitment (or any of the commitments) remained in effect after the issuance of the Original Policy. Lawyers Title references the final commitment only as evidence of the agreement between the parties to support its claim for reformation of the policy. Further, this is not a misrepresentation that could have induced reliance by Doubletree, since it was never stated or claimed by Lawyers Title. Therefore, since no other misrepresentations or omissions are alleged by Doubletree, its claims relating to misrepresentations[16] made by Lawyers Title should be dismissed.

TEXAS INSURANCE CODE § 541.060(a)(2) provides:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following... with respect to a claim by an insured or beneficiary:
(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:
(A) a claim with respect to which the insurer's liability has become reasonably clear; or
(B) a claim under one portion of a policy with respect to which the insurer's liability has become reasonably clear...

The Court has already held that Doubletree's claim was not covered under the policy, and at

---

[15] Or that the Flowage Easement would be excepted only as depicted on the survey.

[16] The claims relating to misrepresentation are stated in the opening paragraph of this section and are numbered (1), (2), (3), (7), (8), (9), and (10). The Court also notes that Doubletree asserted no omission made by Lawyers Title; therefore, claim (8) must be dismissed for this reason. Further, Doubletree asserted no misstatement of law related to the policy, and claim (10) must also be dismissed.

minimum, liability was unclear at the time the claim was denied.  Therefore, for the same reasons stated in this opinion in the sections regarding the contract claim and the bad faith claim, this claim should also be dismissed.

> TEXAS INSURANCE CODE § 541.060(a)(2) provides:
>
> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following... with respect to a claim by an insured or beneficiary:
>> (3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim...

Doubletree states, without specificity or citation to any evidence, that it was not provided with a reasonable explanation of Lawyers Title's denial of their claim.  On April 29, 2008, Lawyers Title sent its denial of the claim to Doubletree (Dkt. #123, Tab 28).  That denial is six (6) pages in length, contains citations to relevant policy provisions, exclusions, and exceptions, and contains facts relating to the mistake that occurred when the Original Policy was issued (Dkt. #123, Tab 28). Further, the document explains that the reasons for the denial of the claim are based on the lack of coverage in the insuring provision, Exclusion 3(a), and the fact that the exceptions were mistakenly excluded from coverage.  This explanation of the denial of the claim is clearly reasonable, as those are the same reasons that the Court determined coverage did not exist under the policy.  Finally, Doubletree seems affronted that the denial refers to all the exceptions listed in the title commitment as a reason for denying coverage.   However, this appears to be Lawyers Title's response to Doubletree's claim that the exceptions, including the Flowage Easement, were not included in the policy.  The denial refers to the title commitment as evidence that the exceptions were intended to be included, and were inadvertently not printed.  Therefore, for these reasons, this claim should also be dismissed.

TEXAS INSURANCE CODE § 541.060(a)(7) provides:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following... with respect to a claim by an insured or beneficiary:
>> (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

Doubletree contends that Lawyers Title failed to conduct a reasonable investigation because they did not create a list of persons with knowledge, obtain crucial facts from those persons, interview the insured, review the insured's records and files, take the insured's statement under oath, visit the property, take photographs of the site, retrieve aerial photographs, surveys and maps, and interview the adverse party to obtain the party's statement of facts and legal theory (Dkt. #152 at 6-7). Doubletree argues that Lawyers Title failed to conduct any investigation of the claim until after Lawyers Title filed this suit. Lawyers Title contends that its investigation of the claim that was actually filed, that is that the exceptions were not included on Schedule B, was reasonable.

Sally Sherman ("Sherman") conducted the investigation on behalf of Lawyers Title (Dkt. #134, Tab 70 at 1453-1454). Sherman obtained the policies referred to in the claim letter, and ordered the GF files from the location that issued the policy. *Id.* at 1454-1456. In addition, Sherman retained outside counsel to assist in the investigation and coverage determination. *Id.* at 1457. Sherman also conducted interviews of people employed at Lawyers Title involved in issuing the policy, as well as technology personnel to determine how the policy could have issued without the Schedule B exceptions. *Id.* at 1461. Sherman testified that the claim filed by Doubletree was for all of the exceptions on Schedule B that should have been included in the Original Policy. *Id.* at 1465. Sherman further testified that she began her investigation by attempting to figure out why the exceptions were not included in the policy, and could find no evidence that the parties agreed to their

removal or any modification of the final title commitment. *Id*. Therefore, she never reached a point in the investigation that would require her to investigate each individual exception, because she determined the policy was issued in error. *Id*. at 1466-67.

As a matter of law, Texas courts hold that claims brought under the DTPA, Insurance Code, or both, "require the same predicate for recovery as bad faith causes of action in Texas." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997); *Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 544 (S.D. Tex. 1999). "An insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage." *Higginbotham,* 103 F.3d at 460. "When an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims." *Douglas*, 37 F. Supp. 2d at 544. Because the Court found that Doubletree's claim had no coverage under the policy, and Lawyers Title had a reasonable basis for denying the claim, then there can be no statutory claims under the Insurance Code. Regardless of whether or not the investigation was reasonable, since there is no liability for bad faith, there can be no liability under the Insurance Code. Therefore, Doubletree's claims under the Insurance Code should be dismissed.

### iii.  *Negligent Misrepresentation*

In order to recover for negligent misrepresentation, Doubletree must prove: (1) Lawyers Title made a representation to Doubletree in the course of its business; (2) Lawyers Title supplied false information for the guidance of others; (3) Lawyers Title did not exercise reasonable care or competence in obtaining or communicating the information; (4) Doubletree justifiably relied on the representation; and (5) Lawyers Title's negligent misrepresentation proximately cause Doubletree's

injury. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interest*, 991 S.W.2d 787, 791 (Tex. 1999).

In its motion for summary judgment, Lawyers Title asserts that Doubletree has no evidence that Lawyers Title made any representations to Doubletree prior to the purchase of the property, that Lawyers Title supplied false information, that Lawyers Title failed to exercise reasonable care in communicating false information, or that Doubletree relied on any representations. Doubletree asserts in its Response that "Lawyers [Title] made negligent misrepresentations to Doubletree. More specifically, Lawyers [Title] misrepresented the very nature of its title insurance coverage in the course of its business, and supplied false information for the guidance of Doubletree" (Dkt. #140 at 21). Doubletree gives no specific misrepresentations made by Lawyers Title.

If the nonmovant bears the burden of proof, which Doubletree does here, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers*, 209 F.3d at 424. Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. Doubletree has not met its burden to set forth particular facts indicating a genuine issue for trial, and, therefore, summary judgment for Lawyers Title is appropriate here. Doubletree's claim for negligent misrepresentation should be dismissed.

### iv. Common Law Fraud

In order to establish a cause of action for common law fraud, Doubletree must prove (1) Lawyers Title made a representation to Doubletree, (2) the representation was material, (3) the

representation was false, (4) when Lawyers Title made the representation, Lawyers Title knew the representation was false or made the representation recklessly, as a positive assertion, without knowledge of its truth, (5) Lawyers Title made the representation with the intent Doubletree act on it, (6) Doubletree relied on the representation, and (7) the representation proximately caused Doubletree's injury. *Aquaplex, Inc. v. Rancho la Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

Lawyers Title argues that Doubletree has no evidence of any of these claims, but particularly that Lawyers Title made a false, material representation to Doubletree, which it knew was false or made recklessly with the intent Doubletree act on it. Doubletree asserts the same allegations for this claim as it does for the other claims based on misrepresentation. Doubletree's Response states, in its entirety regarding this claim:

> Lawyers misrepresented the nature of its title insurance coverage, and such misrepresentations were both material and false (specifically regarding the shelf life of the commitment, the ability to rewrite coverage after an incurred loss and a covered claim, and the very nature of Survey Coverage). Lawyers knew of the falsity at the time of the misrepresentations, or made the misrepresentations recklessly, as a positive assertion, and without knowledge of their truth. The representations were made with the intent that Doubletree would act upon them. Doubletree relied thereon, and it caused injury to Doubletree. Lawyers committed common law fraud, and Doubletree suffered actual damages as a result thereof.

(Dkt. #140 at 19-20). Again, Doubletree gives no specific representations made by Lawyers Title. Further, the Court has already determined that the representations described here were not false. Finally, there is no evidence at all as to the alleged intent of Lawyers Title in making the alleged representations.

As stated above, if the nonmovant bears the burden of proof, which Doubletree does here, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers*, 209 F.3d at 424. Once the movant has carried

its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. Doubletree has not met its burden to set forth particular facts indicating a genuine issue for trial, and, therefore, summary judgment for Lawyers Title is appropriate here. Doubletree's claim for common law fraud should be dismissed.

### v. Statutory Fraud

In order to establish a cause of action for statutory fraud, Doubletree must prove (1) there was a transaction involving real estate or stock, (2) during the transaction Lawyers Title made a false representation of fact, a false promise, or benefitted by not disclosing that a third party's representation or promise was false, (3) the false representation or promise was made for the purpose of inducing Doubletree to enter into a contract, (4) Doubletree relied on the false representation or promise by entering into the contract, and (5) the reliance caused Doubletree injury. Tex. Bus. & Com. Code § 27.01(a).

Lawyers Title argues that Doubletree has provided no evidence on any of these requirements for statutory fraud. Doubletree alleges the same misrepresentations as the above cause of action, adding only that Lawyers Title "made a false promise to deliver a title insurance policy that would purportedly protect Doubletree from losses stemming from errors in the survey, yet Lawyers now takes the position that those losses are not covered" (Dkt. #140 at 20).

Lawyers Title argues that under the terms of the statute, Doubletree's purchase of the insurance policy is not a real estate transaction, and the terms of the statute do not apply. Doubletree argues that the statute requires a transaction "involving" real estate, and that this insurance

transaction clearly involves real estate. However, the purchase of title insurance is not a "real estate transaction" within the meaning of the statute. *Am. Title Ins. Co. v. Byrd*, 384 S.W.2d 683, 685 (Tex. 1964). Describing the predecessor statute to § 27.01, the Court in *Byrd* held that the transaction "between [p]etitioner and [r]espondent was not a transaction in real estate or in stock; it was a transaction in title insurance which was incidental to the transaction in real estate." *Id*. "For fraud in a transaction to be actionable under § 27.01, the contract must actually effect the conveyance of real estate between the parties and cannot merely be tangentially related or a means of facilitating a conveyance of real estate." *Windsor Village, Ltd. v. Stewart Title Ins. Co.*, No. 14-09-00721, 2011 Tex. App. LEXIS 1951, at *14-15 (Tex. App. – Houston [14th Dist.] March 17, 2011, no pet.). Doubletree provides no case law in opposition.

This transaction is the purchase of title insurance, and under Texas law it does not constitute a transaction involving real estate. Further, as stated above, if the nonmovant bears the burden of proof, which Doubletree does here, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers*, 209 F.3d at 424. Once the movant, Lawyers Title, has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. Doubletree has not met its burden to set forth particular facts indicating a genuine issue for trial on the issue of statutory fraud, and, therefore, summary judgment for Lawyers Title is appropriate here. Doubletree's claim for statutory fraud should be dismissed.

### vi. DTPA

Doubletree alleges that Lawyers Title violated the DTPA by: (1) representing that goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they did not have, in violation of § 17.46(b)(5); (2) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another, in violation of § 17.46(b)(7); (3) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, in violation of § 17.46(b)(12); (4) engaging in an unconscionable action or course of action; and (5) engaging in an act or practice in violation of Chapter 541 of the Texas Insurance Code (Dkt. #113 at 25-26). Lawyers Title moves for summary judgment on all of these claims, stating that Doubletree has no evidence Lawyers Title engaged in prohibited conduct, or that Doubletree relied on that prohibited conduct. Doubletree moves for summary judgment only on those claims that are based on violations of Chapter 541 of the Texas Insurance Code. Those claims brought under the Texas Insurance Code have already been dismissed for reasons discussed above, and will not create a claim under the DTPA here. Therefore, the claim for the same violations under the DTPA should be dismissed.

Doubletree makes no response to Lawyers Title's assertion that they have no evidence that Lawyers Title engaged in prohibited conduct. As stated above, if the nonmovant bears the burden of proof, which Doubletree does here, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers*, 209 F.3d at 424. Once the movant, Lawyers Title, has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must

adduce affirmative evidence. *Anderson*, 477 U.S. at 257. Doubletree has not met its burden to set forth particular facts indicating a genuine issue for trial on the issue of the violations of the DTPA, and, therefore, summary judgment for Lawyers Title is appropriate here.

To prevail on its DTPA claims, Doubletree must prove that Lawyers Title engaged in the prohibited conduct and the conduct was a producing cause of Doubletree's damages. Tex. Bus. & Com. Code § 17.50(a), (h). As stated above, as a matter of law Texas courts hold that claims brought under the DTPA, Insurance Code, or both, "require the same predicate for recovery as bad faith causes of action in Texas." *Higginbotham*, 103 F.3d at 460; *Douglas*, 37 F. Supp. 2d at 544. "An insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage." *Higginbotham,* 103 F.3d at 460. "When an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims." *Douglas*, 37 F. Supp. 2d at 544. Because the Court found that Doubletree's claim was not covered by the policy, and Lawyers Title had a reasonable basis for denying the claim, then Lawyers Title cannot be liable under the DTPA.

Finally, Lawyers Title argues that Doubletree's claims under the DTPA are excluded because the DTPA does not apply to this type of transaction. Section 17.49 of the DTPA provides:

> (f) Nothing in the subchapter shall apply to a claim arising out of a written contract if:
>> (1) the contract relates to a transaction, a project, or a set of transactions related to the same project involving total consideration by the consumer of more than $100,000;
>> (2) in negotiating the contract the consumer is represented by legal counsel who is not directly or indirectly identified, suggested, or selected by the defendant or an agent of the defendant; and
>> (3) the contract does not involve the consumer's residence.

(g) Nothing in this subchapter shall apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence.

Doubletree's claim arises out of a written contract that relates to a transaction, project, or a set of transactions related to the same project, the purchase and development of Doubletree Ranch for a senior retirement community. The total consideration involved was much greater than $100,000. Doubletree was represented by legal counsel in both the purchase of the property and policy, and the property was clearly not Doubletree's residence. Further, Doubletree's claim arises from a transaction, project, or set of transactions relating to the same project, that involved total consideration by the consumer of more than $500,000, and did not involve Doubletree's residence.

Doubletree argues that Lawyers Title cannot argue above that it is not a real estate transaction, and then argue here that it is a real estate transaction. However, this argument is misplaced. Under the DTPA, the transaction may be a transaction, a project, or a set of transactions relating to the same project. The transactions at issue here are clearly a set of transactions relating to the same project, which was the development of Doubletree Ranch as a senior living community. Therefore, Doubletree's claims under the DTPA are barred by Section 17.49.

### vii. Lawyers Title's Affirmative Defenses

Doubletree moves for summary judgment on each affirmative defense pleaded by Lawyers Title. Doubletree's argument for summary judgment merely states, "There is no evidence of such affirmative defense." Since Lawyers Title bears the burden of proof on each of the affirmative defenses, Doubletree bears the initial burden of identifying the specific basis for the motion and identifying the portions of the record demonstrating that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. Doubletree has not met its burden here to identify the specific basis for

moving for summary judgment on these affirmative defenses. "It is not enough to move for summary judgment with a conclusory assertion that the plaintiff has no evidence to prove his case." *Id*. at 328 (White, J., concurring).

Further, Lawyers Title's affirmative defenses of proportionate responsibility and failure to mitigate are no longer relevant, since the Court found that Doubletree's claim was not covered under the title insurance policy.

### viii. Lawyers Title's Claim for Attorney's Fees

Doubletree moves for summary judgment on Lawyers Title's counterclaim for attorney's fees under TEX. BUS. & COM. CODE § 17.50, and 29 U.S.C. § 1927. The issue of attorneys' fees is premature at this time, since the federal rules require that a claim for recovery of fees shall be made by motion within 14 days after entry of judgment and must specify the judgment and the statute, rule, or other grounds entitling the movant to the award. FED. R. CIV. P. 54(d)(2). Further, Lawyers Title provides evidence sufficient to withstand summary judgment that counsel for Lawyers Title advised Doubletree's counsel that the extra-contractual claims were without merit, and that if Doubletree's counsel persisted in bringing the claims, that Lawyers Title would pursue attorney's fees. Therefore, Doubletree's motion for summary judgment regarding Lawyers Title's counterclaim for attorney's fees should be denied. The Court will consider a motion by Lawyers Title for attorney's fees at the appropriate time.

## CONCLUSION

The Court finds that Doubletree's claim for the undisclosed magnitude of the Flowage Easement is not covered by any of the policies under Exclusion 3(a). The Court further determines that the Corrected Policy is the policy in effect between the parties, and Doubletree's claim is further

barred by Schedule B exceptions to coverage. Finally, the Court finds that Doubletree's extra-contractual claims are without merit, have no evidence to support them, and should be dismissed.

Based on the findings discussed above, it is hereby ORDERED that Lawyers Title's Motion for Summary Judgment on Contract Claims (Dkt. #118) is GRANTED.

It is further ORDERED that Lawyers Title's Motion for Summary Judgment on Extra-Contractual Claim (Dkt. #119) is GRANTED.

It is further ORDERED that Doubletree's First Motion for Summary Judgment (Dkt. #117) is DENIED.

It is further ORDERED that Doubletree's Second Motion for Summary Judgment (Dkt. #125) is DENIED.

It is further ORDERED that Lawyers Title's Motion to Strike Expert Testimony of Mark McPherson (Dkt. #121) is GRANTED in part, and DENIED in part.

All other motions not expressly ruled on in the Court's Opinion are herein DENIED and dismissed as moot.

IT IS SO ORDERED.[17]

**SIGNED this 5th day of October, 2011.**


AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

---

[17] The Court issues this order based on the parties' consent to proceed before a magistrate judge and the current statutory construction of 28 U.S.C. § 636. *Cf. Technical Automation Services Corp. v. Liberty Surplus Insurance Corporation*, No. 10-20640 (the Fifth Circuit's recent order requesting briefing on the issue of whether a magistrate judge's civil consent authority under 28 U.S.C. § 636(c) violates Article III of the Constitution under the Supreme Court's recent decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011)).